**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HILARIO MARTINEZ-SANCHEZ, a/k/a Hilario Lopez Sanchez,<br><br>Petitioner,<br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | No. 5:26-cv-06523 DSR<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE** |

## 1. INTRODUCTION AND PROCEDURAL BACKGROUND

This is a Petition for Writ of Habeas Corpus by a noncitizen who was arrested by Immigration and Customs Enforcement ("ICE") officers after dropping his daughter off at school and taken to immigration detention. After reviewing all papers submitted by both sides, and for the reasons discussed below, the Petition is GRANTED and Respondents are ordered to release Petitioner immediately.

On November 3, 2026, Petitioner Hilario Martinez-Sanchez (a.k.a. Hilario Lopez Sanchez), a noncitizen who has been detained in ICE custody since October 6, 2026, filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the legality of his ongoing detention. See Doc. No. 1. The Petition names as Respondents the Secretary of Homeland Security, the Attorney General of the United States, the Acting Director of ICE, the Los Angeles Field Office Director of ICE, and the Warden-Facility Administrator of the Adelanto ICE Processing Center where Petitioner is detained (collectively "Respondents"). All

Respondents are sued in their official capacity. The Petition seeks a writ compelling Respondents to release Petitioner immediately from immigration custody and return to him all property and documents taken from him, as well as an injunction prohibiting his re-detention without prior notice and a hearing.

The same day as he filed the original Petition, but not concurrently with the Petition, Petitioner voluntarily consented to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). See Doc. No. 6. Respondents did not exercise their right to withdraw their general consent in a particular case, as outlined in the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases, dated March 26, 2026. See Doc. No. 4 at ECF. p. 9. On November 9th, the previously assigned District Judge approved the after-filed consent, and the case became fully consented for a final decision by the undersigned Magistrate Judge. See Doc. Nos. 12, 13.

Pursuant to General Order 26-05, the Clerk of Court served the Petition, along with a Notice of that General Order, on Respondents on November 3, 2026. See Doc. No. 4. Under the expedited briefing schedule established in that General Order, Respondents were directed to file a Notice of Appearance by their counsel in this case no later than November 6th, and an Answer to the Petition no later than November 10th. Id. Respondents timely filed a Notice of Appearance on November 5th, see Doc. No. 8, but before their Answer was due, Petitioner filed a First Amended Petition on November 6th. See Doc. No. 10. The First Amended Petition names the same Respondents, and seeks the same relief, as the original Petition, but updates Petitioner's factual allegations.

Later on November 6th, the Court entered an Order directing Respondents "to show cause in an Answer to the First Amended Petition why the writ of habeas corpus should not be granted," and to file such Answer no later than November 13th. See Doc. No. 11. That Order set the due date for Petitioner's Reply as

November 16th. Id. Respondents timely filed their Answer on November 13th. See Doc. No. 14. Petitioner filed his Reply later that day. See Doc. No. 15.

**2. FACTUAL BACKGROUND**

Petitioner was born in Mexico. See First Am. Pet. at ¶ 18. He first came to the United States in 1995. Id. at ¶ 3; see also Doc. No. 14-3 at ECF p. 2. He is married and the father of seven children, all of whom are United States citizens, and six of whom were born in Orange County between 1997 and 2009. See First Am. Pet. at ¶ 18. His youngest two children are minors, ages 16 and 14, who live with Petitioner and depend on him for support. Id. For approximately 20 years he has owned and operated a small gardening and landscaping business, where his wife also works. Id. at ¶ 19. Prior to the detention at issue here, he lived with his family in Garden Grove, California for the past two or three years. Id. at ¶ 20.

According to Department of Homeland Security Records attached to Respondents' Answer, Petitioner was previously removed from the United States, voluntarily, in 2008 and 2010. See Doc. No. 14-5 at ECF pp. 3-4. On July 14, 2010, he again crossed the border with Mexico back into the United States, this time with several other individuals by panga-style boat with the assistance of a smuggler. See Doc. No. 14-4 at ECF p. 4. On July 16, 2010, he (with others on the boat) came ashore at Camp Pendleton and was detained by Border Patrol. Id. at ECF pp. 4-5. He was interviewed by Border Patrol agents and gave a statement in support of their investigation of the smuggler, then was served with an Administrative Arrest Warrant (I-200), Notice to Appear (I-862), Notice of Rights and Request for Disposition (I-826), and a list of free legal services. Id. at ECF p. 5. He was apparently then released, and DHS declined to prosecute that Notice to Appear. See Doc. No. 14-5 at ECF p. 4. There is no further information in the record before the Court of any further steps taken by immigration authorities against Petitioner over the following 16 years.

On October 6, 2026, however, ICE agents "conducted a targeted enforcement operation to locate and arrest" Petitioner. See Doc. No. 14-5 at ECF p. 2. At approximately 7:43 that morning, officers observed Petitioner exit his home in Garden Grove and enter the driver's seat of a Dodge truck parked on the street in front of the home. Id. at ECF pp. 2-3. A female juvenile then got in the passenger seat. Id. at ECF p. 3. The juvenile was Petitioner's 14-year-old daughter. See First Am. Pet. at ¶ 23. ICE agents then continued their observation of the vehicle as it drove to a local school, where Petitioner's daughter exited the vehicle. See Doc. No. 14-5 at ECF p. 3. The agents then followed Petitioner as he drove back toward his home and pulled him over approximately 0.1 mile from his home. Id.; see also First Am. Pet. at ¶ 23. Petitioner identified himself to the ICE agents by name and birthdate and admitted that he did not have lawful status in the United States. See Doc. No. 14-5 at ECF p.3. The ICE agents then informed him that they had a Form I-200 Administrative Arrest Warrant for him and took him into custody "without further incident" at approximately 8:10 a.m. Id.

The agents then transported Petitioner to the Santa Ana Sub-office where he "was processed as a Notice to Appear." Id. at ECF p. 4. They served him personally with a written Notice to Appear that day, though the time and location of such service is not specified in the record before the Court. See First Am. Pet. at ¶ 27; see also Doc. No. 10-6 at ECF p. 3 and Doc. No. 14-5 at ECF p. 5. That Notice to Appear, a copy of which is attached as Exhibit "F" to the First Amended Petition, charges Petitioner as being subject to removal from the United States under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). See Doc. No. 10-6 at ECF p 4. The Notice to Appear was signed on October 6, 2026. Id. at ECF p.1.

In addition to the reports cited above (Doc. Nos. 14-4 and 14-5), Respondents also attach to their Answer a "Warrant for Attest of Alien," Form I-200. See Doc. No. 14-6. That administrative warrant is dated August 12, 2026. Id.

**3. CLAIMS AND RELIEF SOUGHT**

Petitioner seeks a Writ of Habeas Corpus compelling his immediate release from immigration detention because his detention is not statutorily authorized. See First Am. Pet. at ¶ 58.[1] He asks the Court to compel Respondents to release him immediately, subject only to the conditions – if any – in place before his October 6, 2026, detention, or in the alternative an order compelling Respondents to provide him a bond hearing before an Immigration Judge at which Respondents bear the burden of proving that he is a flight risk or a danger if released. Id. at prayer ¶¶ F-G.

**4. LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here, and Respondents do not contest the point.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because this requirement is "prudential" and not a "jurisdictional prerequisite," however, it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court

---

[1] Petitioner also makes other, alternative, claims, for the Writ. See First Am. Pet. at ¶¶ 54, 58, and 60. Because the Court finds that his immigration detention is not statutorily authorized, and his release is therefore appropriate on that basis, however, it is unnecessary to adjudicate his alternative claims.

properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional."). Here, Respondents do not address the exhaustion requirement in their Answer, and it is unclear what administrative remedy Petitioner may have for the particular claims he raises here. Thus, the Court finds that any failure by Petitioner to exhaust available administrative remedies in this matter (assuming there are any) is not a bar to this Petition. The Court therefore proceeds to consider the merits of the Petition.

**5. DISCUSSION**

Petitioner contends that Respondents lack a statutory basis to detain him because the prerequisites for detention under 8 U.S.C. § 1226(a), which is the statutory authority to detain noncitizens (like Petitioner) arrested in the interior of the United States pending determination of removal proceedings against them, are not satisfied here. See First Am. Pet. at Parts V.C – V.D. In particular, he alleges in the First Amended Petition that he was arrested without a valid warrant. Id. at ¶ 44. Respondents counter in their Answer that the ICE agents did have an Administrative Warrant to arrest Petitioner (which they attach to the Answer), and that even if they did not, "warrantless arrests do not support a claim for habeas relief." See Answer (Doc. No. 14) at 2:6-8. Respondents do not dispute that the only applicable statutory authority for Petitioner's detention is Section 1226(a).[2] In response, Petitioner points out in his Reply that the Warrant Respondents now rely on was issued eight weeks before any charging document, and therefore does not satisfy the requirements of Section 1226(a). See Reply at 2:13-15.

---

[2] Nor could they. Because Petitioner was arrested and detained far from the border (in inland Orange County 0.1 miles from his home), and 16 years after his last known border crossing, he is not subject to detention under 8 U.S.C. § 1225(b). See Rodriguez Vasquez v. Bostock, 183 F. 4th 1160, 1172 (9th Cir. 2026). Respondents offer no crime qualifying Petitioner for mandatory detention under 8 U.S.C. § 1226(c). Finally, Respondents assert that "Petitioner is subject to ongoing immigration proceedings." Answer at 4:20. Thus, he necessarily does not have a final order of removal, and therefore 8 U.S.C. § 1231 also does not authorize his detention.

**A. The Warrant on Which Respondents Rely Was Not Valid**

The Administrative Warrant on which Respondents rely here, attached to their Answer as Exhibit "6," is dated August 12, 2026. _See_ Doc. No. 14-6. A warrant of this type is for the arrest of a noncitizen who is charged with removability by a Notice to Appear. In fact, it says on its face that the issuing officer has "determined that there is probably cause to believe Lopez-Sanchez, Elario [an admitted alias of Petitioner] is removable from the United States. This determination is based upon: _the execution of a charging document to initiate removal proceedings against the subject_." _Id._ (emphasis added). By regulation, such a Warrant may be issued "at the time of the issuance of the notice to appear [i.e., the charging document], or at any time thereafter and up to the time removal proceedings are completed." 8 CFR 1236.1b1. In this way it is like a judicial arrest warrant, which is issued only _after_ a charging document is filed. _See_ Fed. R. Crim. P. 4 (arrest warrant following a criminal complaint); Fed R. Crim. P. 9 (arrest warrant following an indictment).

At the time the Administrative Warrant Respondents rely on here was issued, however – August 12, 2026 – there was no Notice to Appear — no "charge" on which to arrest Petitioner. The only Notice to Appear in the record is dated the date of the arrest, October 6th. Thus, the Warrant on which Respondents rely was not properly issued under the INA. Petitioner's arrest, therefore, was warrantless.

**B. Title 8 U.S.C. § 1357(a)(5) Does Not Apply on These Facts**

Respondents next attempt to justify Petitioner's October 6th arrest as lawful, even if warrantless, under 8 U.S.C. § 1357(a)(5). _See_ Answer at Part III.C. The particular provision Respondents rely on provides that an authorized immigration officer "shall have the power without warrant … (5) to make arrests (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence." 8 U.S.C. § 1357(a)(5)(A). Respondents argue Petitioner admitted to ICE agents that he was in the United States illegally, so the agents were

allowed to arrest him, even without a warrant. See Answer at 6:19-21. In essence, Respondents argue that Petitioner's arrest was a valid probable-cause arrest.

That authority is completely inapposite to this situation, however. Aside from the fact that merely being "in the United States illegally" is not an "offense against the United States,"[3] even if it was, the ICE agents did not arrest Petitioner for committing an offense against the United States. Moreover, a criminal arrest would not justify Petitioner's ongoing detention. Had the agents arrested Petitioner for a crime under Section 1357(a)(5)(A), they would have been required to bring him "without unnecessary delay before a United States magistrate judge" and "contact an Assistant United States Attorney to arrange for an initial appearance." 8 C.F.R. § 287.8(c)(vi). At that initial appearance, Petitioner would have been entitled the full panoply of rights afforded a criminal Defendant, including a determination of whether he could be detained or released, as governed by the Bail Reform Act. See Fed. R. Crim. P. 5(d). For whatever reason, the ICE agents chose not to arrest Petitioner for any offense against the United States, and instead chose to detain him on civil immigration charges. Section 1357(a)(5)(A) does not support Petitioner's arrest on a civil immigration charge of removability, nor authorize his present civil detention.

### C. In the Absence of a Valid Warrant, Section 1226(a) Does Not Authorize Petitioner's Immigration Detention

That Petitioner's arrest was warrantless does not end the analysis, however, on the question of whether the Writ of Habeas Corpus should issue compelling his

---

[3] See Arizona v. United States, 567 U.S. 387, 407 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States. [citation omitted]. If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent."). While it is an offense against the United States for a noncitizen who has been previously deported or removed to enter, attempt to enter, or at any time be found in the United States, unless certain exemptions apply, see 8 U.S.C. § 1326(a), Respondents do not assert that the ICE officers had probable cause to believe that Petitioner met the requirements of that crime. More importantly, they did not arrest him for that – or any other – crime.

immediate release from immigration detention. A Writ of Habeas Corpus may issue under 28 U.S.C. § 2241 if the detention is "in violation of the Constitution or laws or treaties of the United States," not if the arrest is in violation of the Constitution, laws, or treaties. Thus, even if Petitioner's arrest violated the Fourth Amendment, applicable provisions of the INA and its regulations, or both and therefore possibly could give rise to a claim for damages under Bivins, that alone does not end the habeas analysis. Rather, it remains necessary to determine whether there is a lawful basis for Petitioner's detention under the immigration laws.

Petitioner alleges in count three of the First Amended Petition that there is no statutory basis for his detention. See First Am. Pet. at ¶ 58. Respondents do not directly answer this count by stating what the basis for Petitioner's detention is, other than argue "the ICE agents then arrested Petitioner pursuant to a valid administrative warrant and served him with the same," and assert that "Petitioner is subject to ongoing immigration proceedings." Answer at 3:10-11; 4:20. Thus, it appears that Respondents agree with Petitioner's contention that the basis for his detention, if any, is 8 U.S.C. 1226(a).

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Detention under that Section, therefore, is dependent upon the existence of "a warrant issued by the Attorney General." As discussed above, however, there was no valid warrant here. Nor have Respondents established an applicable exception to that requirement. As such, Section 1226(a) also does not justify Petitioner's detention. Respondents offer any alternative statutory justification for Petitioner's detention.

There being no lawful basis for Petitioner's detention, the only conclusion is that he is being held in violation of the Constitution or laws or treaties of the United States. A Writ of Habeas Corpus should therefore issue. 28 U.S.C. § 2241.

**D. Immediate Release is the Appropriate Remedy**

Finally, Respondents assert that "Petitioner appears to be entitled to request and receive any initial bond hearing pursuant to Rodiguez Vasquez v. Bostock, [183 F.4th 1160] (9th Cir. 2026) (finding 'that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).')." Answer at 6:23-27. Why Respondents have not already given Petitioner such a bond hearing, rather than acknowledging his right to one only after he sued, is a question that need not be answered in this case because that relief would not remedy the illegality of Petitioner's detention. As discussed above, because Respondents did not comply with the statutory prerequisites to arrest and detain a noncitizen under the sole legal basis they offer to justify Petitioner's detention – Section 1226(a) – there was no legal basis for his detention from the outset. Giving Petitioner a bond hearing now, at which he must demonstrate that he is not a flight risk or danger to the community no less, does nothing to cure the lack of any legal basis for Respondents to detain him in the first place. Petitioner's present detention has no lawful basis. It therefore must end. Immediate release is the only effective remedy.

**6. CONCLUSION**

If Respondents wish to rely on the provisions of 8 U.S.C. § 1226(a), as they do here, to conduct a "targeted operation" to arrest a father after dropping off his child at school, on then hold him in civil immigration detention, they must comply with the requirements of that statutory scheme — first charge him with removability via a notice to appear, then obtain a valid Administrative Warrant to arrest him on that charge. While there are other additional requirements to support such a detention that come later in the process (including an initial custody determination by the arresting officer and a redetermination by an Immigration Judge), Respondents did not clear even the first hurdle to a lawful detention of Petitioner on the facts before this Court.

Therefore, on the uncontroverted facts and the applicable law, the Court finds that it is appropriate to GRANT the Petition for Writ of Habeas Corpus.

IT IS ORDERED THAT:

1. Respondents shall immediately release Petitioner **Hilario Martinez-Sanchez (a.k.a. Hilario Lopez-Sanchez), A-095-754-100,** from immigration custody, as well as return any to him any personal property and documents seized at the time of his October 6, 2026, arrest.
2. Respondents shall provide Petitioner with a copy of this Order at or near the time of release.
3. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release.

The Court will issue Judgment consistent with this Order.

IT IS SO ORDERED.

DATED: November 19, 2026

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE